539 So.2d 1069 (1988)
Odell SCALES
v.
STATE.
8 Div. 897.
Court of Criminal Appeals of Alabama.
March 8, 1988.
Rehearing Denied April 12, 1988.
*1070 Joe N. Lampley, Huntsville, for appellant.
Don Siegelman, Atty. Gen., and J. Randall McNeill, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Odell Scales was charged by indictment with theft of property in the second degree. She entered a not guilty plea at arraignment and, thereafter, the cause came on for trial and she was found "guilty of theft in the second degree". A sentencing hearing was conducted at which she was sentenced to two years' imprisonment in the penitentiary and ordered to pay a $500 fine plus costs and an assessment of $25 into the Victims' Compensation Fund and restitution in the amount of $34.88. She asked for probation and was placed on probation provided that she first serve a minimum of 30 days in the Madison County Work Release Program and pay the fine and restitution.

I
Just prior to trial in the cause, appellant's counsel objected to the striking of certain black veniremen from the jury panel and cited to the trial court, and does to this court, the United States Supreme Court's opinions of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and in addition, the opinions of the Supreme Court of Alabama in Jackson v. State, 516 So.2d 768 (1986) and also Preston Branch v. State, 526 So.2d 609 (Ala. 1987).
This court, under such cases, must remand this cause for a "Batson hearing" if, upon examination of the record, we find sufficient reason therefor.
During the selection of the jurors for the trial of this cause, the following occurred:
"(The following occurred in chambers and out of the presence and hearing of the Jury:)
"THE COURT: Let the record show that we are in chambers, outside the presence of the Jury. This is being held in chambers concerning some proposed strikes that may involve the Batson case, as I understand it.
"MR. ACCARDI: Judge, we have proposed strikes regarding all of the black minority members for a number of reasons.
"THE COURT: First, identify who they are. I show Lizzie Hambrick, Ethel Hamlett and Michelle Hurt. There are just three; is that correct?
"MR. LAMPLEY: No, four. There is Clarence Hawkins.
"THE COURT: All right.
"MR. ACCARDI: With respect to Ms. Hambrick, she was very slow in responding to questions. She was very slow in responding initially to the Court's request for identification. She was also slow in responding to Mr. Lampley's questions. Because of that it would be my feeling that she would not be a good juror in this particular case. This case involves circumstantial evidence and piecing together pieces of evidence. So we feel because of that she would not be suitable.
"THE COURT: Would you like to speak to that?
"MR. LAMPLEY: Yes, sir. I did not notice anything about Ms. Hambrick's responses to indicate that she was slow in responding.
"THE COURT: I recall Ms. Hambrick and, if I recall correctly, she did seem to take a little longer than usual to respond. When I called her name she was supposed to stand and state where she was employed and the nature of her work and she did appear to be slow in that respect. The *1071 record wouldn't necessarily show that. I did make that observation myself, for whatever it's worth. Go ahead, Mr. Accardi.
"MR. ACCARDI: Judge, with respect to Ms. Hamlett, she is approximately the same age and appearance to the Defendant in this case. There is an Alabama case, Branch vs. State which deals with that issue. The Court upheld a strike where the Defendantthe Defendant and the potential juror in this case, an unemployed black female, who was approximately the same age as the Defendant.
"THE COURT: All right. Go ahead.
"MR. ACCARDI: As to Charles Hawkins, he has a prior arrest record with the City of Huntsville, a bond forfeiture.
"THE COURT: What was he arrested for?
"MR. ACCARDI: It was a taxi violation, a Public Service Commission violation.
"THE COURT: So that would be your reason for striking him, his prior arrest and involvement with the law?
"MR. ACCARDI: Yes, Your Honor.
"THE COURT: All right.
"MR. ACCARDI: Particularly, the City of Huntsville Police Department.
"MR. LAMPLEY: In rebuttal to that, Your Honor, that would simply be a misdemeanor violation. We are talking about a misdemeanor violation. I would further state that that is not a basis to disqualify him as a juror.
"THE COURT: We are not talking about that now. We are talking about peremptory strikes.
"MR. LAMPLEY: The juror indicated to both counsel that he could be fair and impartial down the line to both sides.
"THE COURT: All right. Go ahead.
"MR. ACCARDI: As to Michelle Hurt, again, she is approximately the Defendant's age and the Defendant's appearance. Also, there are two unknown factors for the State in this case, one, she worked at A & M with Ms. Bessie Robinson and she is going to be a witness for the State. She was also employed by Sears. We have no specific information on her relationship with Sears, whether it be favorably or unfavorably.
"MR. LAMPLEY: It seems to me like she would be more of a State's witness, or State's juror, than a defense juror, inasmuch as she worked around Ms. Robinson.
"MR. ACCARDI: That possibly could be, Your Honor. We have an uncertainty as to that.
"MR. LAMPLEY: She also stated, Your Honor, that she could be fair and impartial to both sides.
"THE COURT: Well, again, let me say for the record that this is new ground for me. I have read the Batson decision and I understand itwell, I can't say that I understand it. I think the Batson case is saying that you must have some other reason to exercise peremptory strikes besides the race of the juror. Is that correct? Is that a fair statement?
"MR. ACCARDI: I think that's the exact words of the Court.
"THE COURT: Well, you have now stated to the Court prior to exercising your peremptory strikes the reason for the strike, the reasons that you intend to strike these people.
"MR. ACCARDI: Yes, Your Honor.
"THE COURT: I think procedurally now if we go back out and I let you exercise your peremptory strikes, and if you do in fact strike these people I will let Mr. Lampleywell, let's see. He has to request a hearing of some sort, which I suppose is what we have already had. Is this satisfactory for your purposes in that regard, Mr. Lampley?
"MR. LAMPLEY: This is satisfactory for my purposes, Your Honor. I will only state that in support of the Batson case that this panel only has four blacks on it and that it is counsel's intent to strike all of the blacks from the panel, and it is my understanding of the Batson case that when blacks are struck from the jury panel it cannot be based upon the fact that they are black. The Defendant in this case is black.
*1072 "Secondly, any grounds must be neutral ground and neutral reasons, non-associated with race. There must be some reason given other than race.
"THE COURT: I think that's what he is doing, stating his reasons for proposing to strike all of the blacks. I think that if counsel exercises his right and does in fact strike all of the blacks maybe he does so at his own peril. He has stated to the Court his reasons for proposing to do this. Now, whether that is sufficient or nothaving been a trial attorney myself, I can understand what Mr. Accardi is saying with respect to Ms. Hambrick being somewhat slow in responding. The State's case does involve some technical matters of piecing things together and she might be inclined to go along with whatever somebody else wanted to do. With respect to Ethel Hamlett and Michelle Hurt, there are some similarities there between the parties. Whether that is sufficient reason or not, I don't know. I have always had trouble finding reasons to strike jurors, quite frankly. Now, as to Michelle Hurt and her prior association with one of the State's witnesses, that's a two-edge sword. I was always well aware of that in my practice of law. For example, if Sears had fired her, or if she had had a bad relationship with the proposed witness, I don't know which way that would go. If I had some extra strikes I might just eliminate her. I think that might be a sufficient reason. As to Clarence Hawkins, his prior arrest and prior involvement with the law, if I were the District Attorney that would be a reason for me to strike him, regardless of his color. I think the reasons stated are sufficient; however, I do make the observation that if the State strikes all of the blacks from the Jury he might do so at his peril. That's not my decision to make. That's the State's decision.
"Having articulated those reasons, I would conclude that the Batson hearing has been held.
"Mr. Lampley, I would assume you would make some objection if he elects to exercise all of those strikes.
"MR. LAMPLEY: Yes, sir, I would make my objection now, and my objection would be that if he strikes any juror, except the one who has the prior misdemeanor conviction, I would raise the Batson objection to all other blacks on the jury panel being stricken.
"THE COURT: I would overrule. Let's proceed with the case." (R. 9-15)
In Preston Branch, supra, as extended on rehearing, the Supreme Court of Alabama stated the following:
"THE BATSON AND JACKSON RULES
"What exactly do Batson and Jackson hold? Our interpretation of the opinions in Batson and Jackson show that they, at least hold as follows:
"(1) The Swain rule, which allowed prosecutors to use their peremptory challenges to exclude members of a cognizable racial group from jury service, has been changed.
"(2) Peremptory challenges are not entirely eliminated, but prosecutors are restricted in their use, and if prosecutors' use of them is challenged and a prima facie case of discrimination is shown, prosecutors must be able to give neutral reasons for their use.
"(3) Peremptory challenges may be, and `unfortunately [have] been used to discriminate against black jurors'. Batson, 476 U.S. at [99], 106 S.Ct. at 1724 (emphasis added)."
"(4) The State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Fourteenth Amendment, Batson, and Sections 1, 6 and 22 of the Alabama Constitution of 1901. Jackson.

"(5) Racial discrimination in the selection of jurors harms not only the accused, whose life and liberty they are summoned to try, but could also discriminate against the excluded juror, thereby undermining `public respect for our criminal justice system', Batson, 106 S.Ct. at 1724, and could violate the public policy of this state that each person called is entitled to be `considered' for service. Code 1975, § 12-16-55.

*1073 "(6) Both the Alabama and Federal Constitutions prohibit a prosecutor from challenging a potential juror solely on account of his or her race, or on the assumption that black jurors, as a cognizable group, will be unable to impartially consider a case.
"(7) It is the duty of the trial court to determine, first, whether the defendant has made a requisite showing of the racially discriminatory use of peremptory challenges, and to further determine whether the `prosecutor [has] articulate[d] a neutral explanation related to the particular case to be tried.' (Emphasis added.) Batson, 476 U.S. at [98], 106 S.Ct. at 1723. `No mere whimsical or fanciful reason will suffice.' (Emphasis added.) Jackson, [MS. 84-1112, December 19, 1986] [516 So.2d at 768] (Ala. 1986)." (footnotes omitted)
Under the mandate contained in the opinions of the Supreme Court of the United States in Batson and Griffith, supra, and, in addition thereto, the opinions of the Supreme Court of Alabama in Jackson and Preston Branch, supra, this court has no alternative but to remand this cause for a hearing with counsel present to represent this appellant.
This court does, hereby, direct to the trial court to conduct an evidentiary hearing to determine, under the cases herein cited, if the peremptory challenges which were used to remove certain black persons from the jury venire in this cause did establish a prima facie case of racial discrimination as shown by the record in this cause. The appellant and her counsel shall be present in court at such hearing. The district attorney shall state his reasons in using such strikes and opposing counsel shall be given an opportunity to respond.
Following such hearing, a due return shall be filed in this court showing the testimony taken in the circuit court on this question and the findings of the trial judge, by written order, with reference to the evidence developed at such hearing.
Such return, together with the trial judge's written findings and order, shall be filed expeditiously in this court following the hearing in circuit court.
This court is of the view that the "Batson question" was properly preserved for review in this court as shown by this record. See also Swain v. State, 504 So.2d 347 (Ala.Cr.App.1986) and Levert v. State, 512 So.2d 790 (Ala.Cr.App.1987).
For the reasons stated, this cause is hereby remanded with directions for a hearing.
REMANDED WITH DIRECTIONS.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., dissents with opinion.
BOWEN, Presiding Judge, dissenting.
I dissent. The majority remands this cause ordering the trial judge to conduct a "Batson" hearing under the guidelines of Branch v. State, 526 So.2d 609 (Ala.1987).
The constitutional standard was established in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Branch sets forth the Alabama Supreme Court's "understanding of the Batson decision, and the procedure that [a majority of Supreme Court judges] believe must be followed to implement it, the specific role of the trial judge in the process, and the scope of appellate review of the trial court's determination." Branch, 526 So.2d at 616.
Here, the trial court conducted a Batson hearing before the guidelines of Branch were issued. I do not think this Court is automatically required, as the majority indicates, to remand this cause for a second Batson hearing.
In Ex parte Shelton, 521 So.2d 1038 (Ala.1988), a majority of our Supreme Court refused to do that very thing. There the majority denied certiorari without opinion. The dissenting opinion of Justice Maddox, in which he was joined by Justices Jones and Adams, would grant the writ "[b]ecause the Court of Criminal Appeals and the learned trial judge did not have before them the specific guidelines of Branch, and because the race-neutral explanations *1074 given here are similar to those given in Branch."
In my opinion, this Court is not automatically required to remand a cause for an evidentiary hearing conducted under the guidelines of Branch, where the trial court has already conducted a Batson hearing before the date of the Branch opinion. In some cases, a remand for a Branch hearing will be required. However, the decision to remand must be made on a case by case basis with consideration given for the particular facts and circumstances of each case. Ex parte Shelton, supra. Here, the prosecutor gave race-neutral explanations for his peremptory challenges and I would not remand this cause for another evidentiary hearing on that same question.